Filed 1/17/24  Cham-Cal Engineering v. Cal. Regional Water Quality Control Bd. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CHAM-CAL ENGINEERING, INC. et al., | |
| Plaintiffs and Appellants, | E079966 |
| v. | (Super. Ct. No. CVRI2101353) |
| CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Daniel A. Ottolia, Judge.

Affirmed.

Isola Law Group, and David R. Isola, for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Robert W. Byrne, Assistant Attorney General,

Michael P. Cayaban, and Theodore A. McCombs, Deputy Attorneys General, for

Defendant and Respondent.

1

# I.

## INTRODUCTION

Defendant and respondent, the California Regional Water Quality Control Board, Santa Ana Region (the Board), issued a cleanup and abatement order (the CAO) to plaintiffs and appellants Cham-Cal Engineering, Inc., and Western Avenue Association, L.P. (Cham-Cal). Among other things, the CAO directed Cham-Cal to mitigate dangerous vapors at its Garden Grove facility. Because Cham-Cal did not timely comply with that directive to the Board's satisfaction, the Board imposed a $620,000 fine on Cham-Cal.

Cham-Cal filed a petition for a writ of administrative mandate in the trial court, seeking to vacate the fine. The trial court denied the petition, and Cham-Cal appealed. We affirm.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

Cham-Cal's Garden Grove facility consists of an Eastern Building, which Cham-Cal Engineering, Inc. occupies, and a Western Building, which its tenant, Western Avenue Association, L.P., occupies. Both companies' employees work at both buildings. The ground underneath both buildings contains various dangerous compounds, which pose serious health risks. These toxic chemicals were found in the soil, soil vapor, and groundwater at the Garden Grove facility. One of the chemicals was tetrachloroethylene

2

(PCE), which was detected in both the Eastern and Western buildings at concentrations above a safe level.

On July 18, 2016, the Board issued the CAO to Cham-Cal under Water Code sections 13304 and 13267. The CAO ordered Cham-Cal to, among other things, design and submit a vapor mitigation plan to protect workers at the Garden Grove facility from inhaling harmful vapors, including PCE vapor, emitted from the contaminated soil into the Eastern and Western buildings.[1] The plan was due by July 3, 2017.

Cham-Cal submitted a vapor mitigation plan in April 2017. The Board conditionally accepted the plan, subject to Cham-Cal addressing deficiencies in the plan that did not, in the Board's view, adequately address the toxic vapor problems at Cham-Cal's facility. The Board thus "concur[red] with [Cham-Cal's] proposed scope of work," provided that Cham-Cal addressed the issues that the Board identified.

Cham-Cal's vapor mitigation plan, as conditionally approved by the Board, required two main measures: (1) increasing ventilation in both the Eastern and Western Buildings and (2) blocking "intrusion pathways" into the building that allowed vapors to enter the building from the soil, such as cracks and joints in the concrete floors.

In June 2017, a sales manager at Cham-Cal attempted to block intrusion pathways in the Eastern Building, but not the Western Building, by applying floor sealant. However, the sealant was not rated for blocking certain toxic vapors at the facility and,

---

[1] Cham-Cal does not challenge other aspects of the CAO. Its appeal concerns only the vapor mitigation plan and the $620,000 in associated penalties.

regardless, Cham-Cal "improperly and incompletely" applied it on only the Eastern Building's floors, while performing no sealing work on the Western Building's floors. The Board thus rejected Cham-Cal's intrusion pathway vapor mitigation work as inadequate on July 27, 2017.

Cham-Cal failed to perform vapor mitigation work to the Board's satisfaction for over a year. Indoor air samples taken from the facility in February 2018 showed that PCE levels in the Western Building were at a safe level, but were far above a safe level in Eastern Building.[2] In the Board's view, it appeared that "[l]ittle to no progress ha[d] been made on correcting and mitigating vapor intrusion within the Eastern Building."

Air samples taken from both buildings in September 2018 later revealed that PCE generally remained present in both buildings at unsafe levels. In the Western Building, the PCE concentrations in the samples ranged from well below an unsafe concentration to over twice a safe concentration (0.22 to 1.07 $\mu g/m^3$) while samples from the Eastern Building ranged from just below an unsafe concentration to dramatically over an unsafe concentration (0.47 to 10.4 $\mu g/m^3$). Although the Board found that the PCE concentrations in the Western Building were "relatively low," the soil beneath both buildings contained exceedingly high levels of PCE, which posed an ongoing risk unless the vapor pathways were adequately sealed.

---

[2] The environmental screening levels for PCE in indoor air are 0.48 micrograms per cubic meter ($\mu g/m^3$) for residential buildings and and 2.1 $\mu g/m^3$ for commercial. The Board consistently used the more conservative residential standard, which Cham-Cal does not challenge on appeal.

In response, the Board sent Cham-Cal a letter in December 2018 outlining the steps that needed to be done to sufficiently block the vapor intrusion pathways at the facility. The Board explained that the September 2018 air samples confirmed that "vapor intrusion is occurring within both buildings and that the vapor intrusion pathway is complete," meaning that the vapors would "continue to enter into the buildings . . . and impact the indoor air quality for the foreseeable future." In other words, Cham-Cal's vapor mitigation efforts were inadequate in the long term.

The Board thus "directed [Cham-Cal] to the seal the floors in the Western Building within 60 days, using a vapor barrier compound such as an epoxy floor seal." As for the Eastern Building, the Board concurred with Cham-Cal's proposal to "postpone vapor mitigation measures" until the excavation of soil underneath the building was completed, but directed Cham-Cal to implement "appropriate vapor mitigation measures" within 60 days after the completion of the soil excavation.

In late June or early July 2019, Cham-Cal sufficiently sealed some, but not all of the intrusion pathways in the buildings. The Board thus found that the seals were inadequate to comply fully with the CAO's vapor mitigation requirements.

The Board responded by filing an administrative civil liability complaint against Cham-Cal on November 15, 2019, for Cham-Cal's failure to, among other things, "implement the required vapor mitigation measures as required by [the CAO] and Water Code § 13304." After an evidentiary hearing on the complaint in October 2020, the Board fined Cham-Cal $1,140,000.

5

About half of the fine ($620,000) was related to the vapor mitigation issues. The Board explained that Cham-Cal could be fined $5,000 per day for not complying with the CAO after the July 3, 2017 deadline, up to November 15, 2019, the date the complaint was filed, for a total of 865 days (July 4, 2017, to November 15, 2019). (See Water Code, § 13350, subd. (e)(1).) The Board, however, "elected to collapse the days of violation to 124 days" (July 3, 2017 to November 5, 2017), resulting in a total fine of $620,000 ($5,000 x 124) for Cham-Cal's "failure to implement the required vapor mitigation measures."

Cham-Cal appealed the Board's decision to the California State Water Resources Control Board, which denied review. Cham-Cal then filed a petition for writ of administrative mandate in the trial court. Cham-Cal asserted the Board's conduct violated Water Code section 13360 and delayed Cham-Cal's vapor mitigation efforts, thereby increasing Cham-Cal's liability, and the fine was unconstitutionally excessive. The trial court denied the petition, and Cham-Cal timely appealed.

III.

DISCUSSION

Cham-Cal raises two arguments on appeal. First, Cham-Cal argues no substantial evidence supports the Board's conclusion that Cham-Cal's vapor mitigation work was inadequate and did not satisfy the CAO's requirements. Second, Cham-Cal argues the Board violated Water Code section 13360, subdivision (a) by dictating the manner in

which Cham-Cal had to perform the vapor mitigation work in order to comply with the CAO. We reject both arguments.

A. *Inadequate Vapor Mitigation Work*

"'In substantial evidence review, the reviewing court defers to the factual findings made below. It does not weigh the evidence presented by both parties to determine whose position is favored by a preponderance. Instead, it determines whether the evidence the prevailing party presented was substantial—or, as it is often put, whether any rational finder of fact could have made the finding that was made below. If so, the decision must stand.' [Citation.]" (*Sweeney v. California Regional Water Quality Control Board* (2021) 61 Cal.App.5th 1093, 1112.)

Substantial evidence supports the Board's finding that Cham-Cal's vapor mitigation work was insufficient. We first note that since the Board fined Cham-Cal for only 124 days of non-compliance with the CAO's July 3, 2017 deadline, the relevant timeframe is 124 days after July 4, 2017, which is November 5, 2017. There is substantial evidence that, as of that date, PCE levels remained at an unsafe level in at least the Eastern Building. Seven of Cham-Cal's eight January 2018 air samples revealed PCE concentration at well above a safe level. Samples from the Eastern Building, taken six months later, in September 2018, confirmed that PCE levels in the building's air remained dangerously high. Some of the September 2018 samples from the Western building revealed unsafe PCE levels as well. Based on this evidence alone, the Board could properly find that Cham-Cal had failed to sufficiently mitigate the vapor pathways

in both buildings, thus violating the CAO.  As a result, substantial evidence supports the

Board's decision to fine Cham-Cal for violating the CAO for 124 days at $5,000 per day.

(Water Code, § 13350, subd. (e)(1).)

Cham-Cal argues otherwise, relying exclusively on a portion of testimony from its

president, Edward Chambers, at the evidentiary hearing.  In doing so, Cham-Cal

misrepresents Mr. Chambers's testimony.

The relevant testimony is between Mr. Chambers and Cham-Cal's attorney, David

Isola, who represented Cham-Cal throughout these proceedings.  The colloquy concerns

one of Cham-Cal's consultants, The Resource Group (TRG), who advised Cham-Cal

(with the Board's approval) on how to seal the vapor intrusion pathways in its facility in

June 2017.  In its opening brief and reply brief, Cham-Cal quotes the discussion as

follows:

> "Q:  Did TRG [Cham-Cal's consultant] specify the type of sealant that should be
> put into the cracks?
>
> A:  MR. CHAMBERS: Yes.
>
> Q:  Did you follow TRG's recommendations?
>
> A:  Yes.
>
> Q:  Did you also follow TRG's recommendations regarding how to seal the cracks,
> the manner in which the sealant would be applied into the cracks?
>
> A:  Yes, except that instead of sealing in the degreaser's general area that [the
> consultant] recommended, we went ahead and sealed 95 percent of the factory,

8

which was four or five times greater amount that 5 was certified as okay to do, so I felt we were doing more than what was necessary. *And our air quality improved to less than the industrial standard. In the front building, most of all of the – all but one of the tests in the front building were non detect, except for one that was under the residential standard, so it was a great improvement*."

This last paragraph, as quoted in Cham-Cal's briefs, omits significant testimony from Mr. Chambers before and after the last two lines sentences italicized above. Mr. Chambers's full testimony reads as follows:

"MR. CHAMBERS: Yes, except that instead of sealing in the degreaser's general area that [TRG] recommended, we went ahead and sealed 95 percent of the factory, which was four or five times greater amount that was certified as okay to do, so I felt we were doing more than what was necessary.

MR. ISOLA: Did Cham-Cal receive a Notice of Violation for failing to implement the air mitigation requirement?

MR. CHAMBERS: Yes.

MR. ISOLA: And what's your understanding as to why this Notice of Violation was issued?

MR. CHAMBERS: They didn't like the way we applied it. They just didn't. They didn't like the glue, they didn't like the way we applied it, so they threw it out.

MR. ISOLA: Did the Regional Board ever advise you that anything you did or The Reynolds Group did with respect to the indoor air mitigation efforts was unlawful?

MR. CHAMBERS: No. Nobody said that.

MR. ISOLA: All right. At some point you went ahead and changed consultants. You released TRG and you hired Mission Geoscience. Why did you make that move?

MR. CHAMBERS: Well, basically, what we've been talking about. Why did he instruct me to use this glue, this process that the Regional Board rejected, even though they approved the processes? And he didn't have an option, so I'm stuck here. I don't know what to do. He has no answers to tell me what to do. Our process is approved by Mr. Kuoch at the Water Board. Turned up they were not approved. So I had to hire somebody else that could give me some answers to proceed. [¶] And we did proceed with Mission Geoscience. And our air quality improved to less than the industrial standard. In the front building, most of all of the – all but one of the tests in the front building were non detect, except for one that was under the residential standard, so it was a great improvement. *That air has been cleaned up but I'm still concerned about the contamination coming onto my property. The vapor under the ground, all of that, is still coming every day*." (Italics added.)

10

When read in its full context, Mr. Chambers's testimony that Cham-Cal selectively quotes does not support its position that his "uncontradicted testimony" proved that Cham-Cal reduced vapor concentrations to below the CAO's requirements. Instead, it shows that its mitigation work in June 2017, some of which was done by its own employees, was rejected by the Board as inadequate. Given that air samples from the facility taken months after showed unsafe levels of PCE concentrations, the Board reasonably rejected Cham-Cal's June 2017 efforts as insufficient.

Regardless, even if Mr. Chambers is correct that Mission Geoscience's recommendations led to acceptable air quality levels, Cham-Cal did not hire Mission Geoscience until 2019, long after the 124-day timeframe relevant here, which ended in November 2019. More to the point, Mr. Chambers testified that, despite the improvements from Mission Geoscience's help, he remained concerned about the ongoing vapor intrusion that remained ongoing "every day" as of the date of the evidentiary hearing in October 2020.

In short, Cham-Cal fails to show that no substantial evidence supports the Board's fining Cham-Cal $620,000 because its vapor mitigation efforts were ineffective.

B. *Water Code Section 13360, Subdivision (a)*

Cham-Cal next argues that the Board violated Water Code section 13360, subdivision (a) by rejecting Cham-Cal's vapor mitigation work. We disagree.

Water Code section 13360, subdivision (a) provides in relevant part: "No waste discharge requirement or other order of a regional board or the state board or decree of a

court issued under this division shall specify the design, location, type of construction, or particular manner in which compliance may be had with that requirement, order, or decree, and the person so ordered shall be permitted to comply with the order in any lawful manner." Simply stated, this provision "preserves the freedom of persons who are subject to a discharge standard to elect between available strategies to comply with that standard." (*Tahoe-Sierra Preservation Council v. State Water Resources Control Bd.* (1989) 210 Cal.App.3d 1421, 1438.) Thus, under Water Code section 13360, subdivision (a), the Board "may identify the disease and command that it be cured but not dictate the cure." (*Ibid.*)

Cham-Cal points to the Board's rejection of its June 2017 mitigation work as evidence that the Board violated Water code section 13360, subdivision (a). But the Board only rejected the work because it was, in the Board's view, substandard and insufficient to comply with the CAO because Cham-Cal used an inappropriate sealant and its employee, not a professional, improperly applied the sealant. In doing so, the Board did not specify or dictate *how* Cham-Cal *had* to perform vapor mitigation work. Although Water Code section 13360, subdivision (a) permitted Cham-Cal "to elect between available strategies to comply with" the CAO, the Board remained free to reject Cham-Cal's work as substandard and non-compliant. (See *Tahoe-Sierra Preservation Council v. State Water Resources Control Bd.*, *supra*, 210 Cal.App.3d at p. 1438 [Board did not violate Water Code section 13360, subdivision (a) by requiring compliance with order where only one method of compliance is possible]; *Conway v. State Water*

*Resources Control Board* (2015) 235 Cal.App.4th 671, 679 [same].)  The Board's rejection of Cham-Cal's June 2017 mitigation work therefore did not violate Water Code section 13360, subdivision (a).

IV.

DISPOSITION

The trial court's order denying Cham-Cal's petition for a writ of mandate is affirmed.  The Board may recover its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.

13